Good morning. Welcome everyone. Today is our second day of oral arguments, September 12, 2012. First case on the call of the docket is agenda number 6, case number 112-890, People v. English, Scott F. English. Counsel for the appellant, please proceed. May it please the court, counsel. My name is Carrie Bryson. I represent Scott English in this appeal. The question before the court today is whether the defendant's felony murder conviction is improper under this court's jurisprudence, particularly beginning with People v. Morgan and then having been carried out in subsequent cases. A brief factual background. In November of 1995, Scott English was indicted for knowing murder, felony murder, based on aggravated battery of a child and then the predicate charge of aggravated battery of a child. He was tried in February and March of 1996. Prior to the jury being instructed in this case, the state opted to dismiss count one of the charges, which was the knowing murder count, and proceed only on felony murder and aggravated battery of a child, specifically with the intent of avoiding the court instructing the jury on the possibility of involuntary manslaughter. The jury returned a verdict of guilty of felony murder and aggravated battery of a child. The defendant took a direct appeal, and his conviction was affirmed. He later filed a post-conviction petition, and that's what we're here on today. It's kind of been a long and tortured path getting here. This petition originally was filed in 1999, was voluntarily withdrawn in 2003, was reinstated in 2004, or sought to be reinstated in 2004. That ultimately came up on appeal, and in 2008, the reinstatement was effective. And so this has been winding around for a while. Ultimately, the post-conviction petition raised a claim under People v. Morgan and People v. Pelt. The trial court rejected that claim, and the appellate court affirmed. The appellate courts upheld that denial, finding that the claim was forfeited because it hadn't been raised on direct appeal, and alternatively that counsel was not ineffective on direct appeal for not raising the claim because the claim essentially was not available. So we're here today. The defendant's conviction of felony murder is improper as a matter of law under this court's decisions in People v. Morgan and Pelt, and the following, the case is following because aggravated battery of a child was an improper predicate here. What's the test for determining whether it's a proper predicate or not? This court has, starting with its decision in Morgan, said we look at whether or not the act, the predicate felony was inherent in and arose from the killing, and also then whether there was an independent felonious purpose. And that has been followed in Pelt, reaffirmed in Davis as the test, and then most recently reaffirmed by this court in Davis in 2010 as what the court will look to to determine whether the predicate felony was proper. So looking at the factual context of the case, where the state dismissed a knowing murder charge, proceeded specifically to avoid involuntary manslaughter instructions, and proceeded only on felony murder based on aggravated battery of a child, our position is that that was an improper predicate and the defendant's conviction is improper as a matter of law. What the court looks at in evaluating whether or not the predicate was inherent in or arising from typically was the same evidence used to prove both. In this case it was. Were the same acts charged for both? In this case it was. They were. The state argued the same things in its closing argument. The theory of this case was that blunt force trauma and asphyxiation together combined to cause the death in this case,  As for the felonious purpose, again we look to the defendant's conduct to determine what purpose was, what his purpose was. There was no independent felonious purpose here. This is the kind of case this court has repeatedly expressed concern about where the same acts and the same evidence are being used to prove both the predicate and the killing. It's difficult to separate an independent felonious purpose out, and that's what we have in this case. The Morgan decision and the cases that have followed specifically have seemed concerned with both eliminating the possibility of a second degree or lesser mental state homicide and then eliminating the need for the state to prove a knowing or intentional murder. That's what happened in this case. For those reasons we submit that Morgan impelled control and should result in a reversal of the felony murder conviction. Now the state has argued procedural obstacles to being able to present this claim, tracking what the appellate court did in this case. Initially finding that the claim was forfeited, but then also arguing, as the appellate court found, that counsel on direct appeal was not ineffective for not raising the claim. And I submit that's patently inconsistent, those findings in that position. For a claim to be forfeited, it has to be available to the parties to be able to be raised. You forfeit a claim by not raising something that could have been raised but wasn't. In this case then, if the claim is forfeited, and I submit Morgan impelled provided a new substantive statement of law. There wasn't necessarily a forfeiture here because this is a shift and a substantive narrowing of the particular criminal statute. What was it that prevented the defendant from raising this on direct appeal? Arguably the change in the law is what we would submit excuses the failure to raise it on direct appeal, excuse as any possible. Any change in the law comes up from, I mean, people are raising that claim. Right. And then eventually the court may take it. So was there something that prevented this? No, I mean, the appellate court suggested that visor was the state of the law at the time and this claim wasn't, for purposes of the ineffective assistance argument, this is where it's a little bit, I think, confusing or inconsistent, the appellate court's ruling because on the one hand the court's saying it's available and on the other hand saying it's not available. This is a shift. It's a new substantive statement of the law. It's a different argument than was presented in visor and this court has continued to adhere to visor in appropriate cases. So visor hasn't been overruled. Visor didn't preclude this sort of claim, but this was a new statement of the law of felony murder in terms of inherent in arising from and the independent felonious purpose requirements. If it is forfeited, though, if this court finds it was forfeited because it wasn't raised on direct appeal, counsel was ineffective for not raising it. Counsel on direct appeal should have recognized that this claim was available and should have pursued it. It was objectively unreasonable for counsel not to present this claim. You know, and to evaluate an effective assistance, we look at the two-pronged Strickland test. Was there deficient performance? By not raising an available claim, that has merit. I mean, as we've argued and as I think the facts of this case show, this fits squarely within this court's jurisprudence in Morgan and Pelt. By not raising an available claim, a meritorious claim, counsel was objectively unreasonable in not pursuing this claim. So if it's forfeited, the forfeiture is excused in this case and the appellate court's decision to the contrary is patently inconsistent. But this argument, ineffective assistance of appellate counsel, was raised in the reply brief on appeal. Is that right? It was raised in the petition initially in the trial court. The trial court didn't reject the petition on the basis of forfeiture. The trial court ruling was that the appellate court's decision on direct appeal was raised judicata based on the instruction issue somehow intertwining with this and that Pelt was distinguishable, so decided the case on those bases. It wasn't presented in the opening brief in the appellate court. It was presented in reply, and ultimately the appellate court addressed the ineffective assistance of counsel argument because it was presented in response to a forfeiture claim in the appellate court. And counsel here hasn't disputed that we should be able to continue arguing that position here. So the issue should have been raised. Direct appeal counsel was ineffective. As you noted, similar issues were being raised even though they were being rejected. And actually after this case was briefed in the appellate court but before this case was decided in the appellate court on direct appeal, the 4th District issued its decision in Morgan. So counsel could have taken steps at that point to point out there was a new case. This should have recognized this was a potential issue here under that law in Morgan and should have pursued this issue. So what do we have if we are left with the appellate court's decision, a patent inconsistency which denies the defendant the ability to obtain relief on what is a meritorious claim and a claim that this court should be concerned about, that there are grave doubts about the viability of this conviction under this court's jurisprudence. And that's where fundamental fairness concerns come into play, and we talked about it in the brief in the final subsection of the argument dealing with the procedural issues in this case. The appellate court's decision is internally inconsistent. It denies the defendant an opportunity to seek relief for an invalid conviction, what I would assert is a void conviction, where the court that entered it under this court's jurisprudence in Morgan and Pelt and the substantive narrowing of the felony murder statute didn't have the authority to enter that judgment. And this court should take action and intervene to both address that patent inconsistency in the appellate court's decision and to grant the relief in this case, which would be the reversal of the felony murder conviction, the reinstatement of the aggravated battery of a child conviction. And we've asked for this court to go on and impose the maximum sentence on that case. The State seems to argue that this is a statutory construction issue rather than constitutional, what's your reply to that? Yeah, the State does argue that this is solely based on statutory construction and doesn't have a constitutional basis and is therefore inappropriate for a post-conviction petition. First of all, there are constitutional underpinnings to this court's decision in Morgan and the cases that have followed because there the court expressly stated it's one of the concerns in that case was that the State could use felony murder charges to avoid its burden of proving a knowing or intentional murder in almost any homicide case. And so the eliminating or avoiding the burden of proof certainly presents a due process issue to this court. Alternatively, we've asserted a voidness argument in response to the State's claim about the constitutional basis, and this is the first time that claim has been raised. This case has been proceeding all along, like say over these some 12, 10 or 12 years as a constitutional claim. But the voidness argument would also address that. If a claim is void, it can be raised in any court at any time, including in collateral proceedings. And finally, we've addressed the ineffective assistance of counsel on direct appeal, and as your honors are well aware, that's also a claim of constitutional basis. That being said, I'd ask the court to remedy the improper conviction here by reversing and reinstating the aggravated battery of a child conviction. Thank you. Thank you, Ms. Bryson. Counsel for the appellee. May it please the court. Counsel, I'm Assistant Attorney General Erin O'Connell on behalf of the people. We've given the court three grounds on which to affirm, the first being that petitioner's claim is forfeited, the second that it relies on a statutory rather than a constitutional basis, and the third being that it is actually meritless under Morgan and related cases. I'd like to start first with the forfeiture argument. The forfeiture argument is fundamental to the fact that this is a post-conviction proceeding. A post-conviction proceeding is only intended to address errors that could not have been raised on direct appeal. Here we have a claim that was based entirely on the trial record. This is traditionally a claim that this court has repeatedly recognized as a type of claim that needs to be raised on direct appeal. It doesn't matter that the law at the time was not as conducive to the claim as it is today. The question is whether it's based on the record, and there's a very liberal standard for whether it was available at the time of the direct appeal. Was counsel, therefore, ineffective for not raising it? No, Your Honor. So the standard for whether it was available is a liberal standard. The standard for whether counsel is actually constitutionally ineffective for failing to raise a claim is a very stringent standard to meet. Isn't that kind of a catch-22 for a defendant? There's no way that he can get relief then. Well, I think that's fundamental, though, to the fact that this is a post-conviction proceeding. It is implicit in the fact that the conviction has to be deemed final at a certain point, and a prisoner cannot wait for another prisoner to bring a similar claim and eventually have a court issue a favorable decision and then at that point jump up and maybe get a second or a third bite at the apple. That's not the intention of the post-conviction act. So it is the case that there can be a claim that's available and therefore forfeited, but appellate counsel is not ineffective for failing to raise it. And, in fact, this happens in a number of contexts, wherever there's been a sea change in the law. For example, when Apprendi was issued or when Batson was issued. Courts have considered similar issues as to was the claim available? Well, yes, it was. I mean, technically, counsel could raise, say, a Batson claim, but was counsel ineffective for failing to predict that Batson would come out? No, because counsel is not expected to anticipate changes. So the fact is that if, say, one out of 100 attorneys can conceive of the claim, that means it was available. If, however, to show that the counsel was ineffective, you would have to show that the majority of those 100 attorneys would have raised the claim. So there is an area here where claims are being precluded. However, that is part and parcel of this being a post-conviction proceeding. And just to give the Court a citation for the Batson argument I just made, there is a case called People v. Richardson, 189L2-401-2000, and we did cite a number of the Apprendi cases in our brief. That's just to give another example of this type of argument being made over and over again. And, in fact, the petitioner has failed to cite a single case in which an appellate counsel was found ineffective for failing to develop a new argument and trying to change the law. It's simply the case that an attorney, to be constitutionally effective, does not have to predict all possible changes that could occur down the line. And, in fact, to grant relief as petitioner is framing it, this Court would have to find that appellate counsel is deficient whenever a claim is available but is not raised. And that's clearly not the standard here. I mean, whether counsel was deficient depends on what the state of the law was at the time, what claims counsel actually raised compared to the claims that counsel didn't raise. The standard is much more stringent than just the fact that a claim was available. Even if the law supports it at the time, appellate counsel doesn't have to raise every single claim. It depends on counsel's strategic decisions at the time of the appeal. The petitioner seeks to excuse his forfeiture on the second basis of fundamental fairness. As we argued, the petitioner actually has forfeited this reliance. He did not at any point in the appellate court argue that his forfeiture should be excused on this basis. He did not really argue in his opening brief that it should have been. And although in the reply brief in a footnote he does note that there is a fundamental fairness issue, he still does not give this court the appropriate standard for what that is or apply it to the facts here. Fundamental fairness doesn't – it's a very specific test. Is there cause and prejudice is the way that this court has interpreted that. And as I think Justice Garmon noted, there is no cause here. There was nothing that was actually preventing this petitioner from raising his claim at the time of his direct appeal. And the second basis on which this court should affirm is that he is raising a statutory rather than a constitutional claim. There are a couple of factors that support this. In the People v. Davis decision cited in the brief, Justice Garmon gave a special concurrence in which she set forth what other states have done and how other states have developed similar doctrines. Looking at those other states, none of them have deemed this to be a constitutional doctrine. Several states have developed a similar limitation. However, they have done so as a matter of statutory construction of their own murder statutes. And in fact, this court's reasoning in Morgan reflects that it was also interpreting the murder statute and in fact was attempting to avoid an absurd result, which would be that in any case, the prosecution could charge a felony murder based on some sort of an aggravated battery and that would preclude the defendant from raising perhaps a meritorious mitigating factor that would reduce it to second degree murder. So this court was in effect construing the felony murder provision in light of the other provisions of the statute. And in fact, one primary case cited by Justice Garmon was a Tennessee case called State v. Godsey, which is 60 SW 3rd, 759 in Tennessee, which kind of sets forth the way other states have done this and concludes as they did that this is a statutory rather than a constitutional issue. Now, the petitioner has noted that this was motivated by the court's concern that the state would be avoiding its burden. And there are a couple of responses to that. The first is that it's not the case that where a doctrine is developed in sort of based on a concern, you know, a constitutional concern, it doesn't morph what is really a statutory claim into a constitutional claim just because a statutory claim was somehow enacted to say affect a constitutional right. And that's shown most clearly in this court's case of People v. Mitchell where the General Assembly had passed a statute as to when a competency hearing was required when there was evidence of psychiatric medications being used. Ostensibly this was based on a constitutional concern. However, the court held that whether a specific hearing was held pursuant to that statute was in fact a statutory claim and therefore could not provide a basis for post-conviction relief. So it's not simply the case that because there is a related constitutional concern that necessarily means that the doctrine itself is constitutionally based. And also the petitioner has claimed that his judgment is void. Petitioner is actually incorrect here. As this court has set forth, voidness is actually a very limited concept that deals with whether the court that entered the judgment had a jurisdiction over the subject matter and the person. Where a claim such as this one where the judgment was rendered by a court with jurisdiction, even if there was an error, that merely renders the judgment voidable rather than void. So this is not the type of claim that can properly be brought in a collateral proceeding simply by saying that it renders the judgment void. And finally, I'll just briefly address the merits in terms of this court's independent felonious purpose doctrine. The court's most recent pronouncement on this was in Davison. And the standards set forth in that case are what should be applied here. Davison set forth that there were two issues that the court would consider when adjudicating this type of a claim. The first is whether there was an independent felonious purpose. And the second is that the court will actually look at the facts of the case to make sure that the court's concerned about making this sort of end run around the second degree murder provisions, that that was not occurring under the facts of the case. And here we have the independent felonious purpose. As discussed, it was the fact that the defendant intended to cause grievous bodily harm here rather than to actually kill his young victim. And furthermore, there is simply no meritorious argument that the defendant could have raised some sort of a mitigating factor. I mean, there was no provocation, no fear of needing to use self-defense. Could Pelt be distinguished or would it have to be overruled? Or a similar fact pattern, right? Right. Pelt can be interpreted in a way that makes it consistent with this court's jurisprudence. I think it can be interpreted in a way similar to Morgan, in that Morgan said if a murder should be prosecuted as intentional, clearly under the evidence, then it's improper to charge it as felony murder. Pelt seems to have been concerned that murder should have been prosecuted as a knowing murder under that alternative provision, instead of felony murder under those facts. However, if the court disagrees with that interpretation, and based on its reading of Pelt, feels constrained to find that there was no independent felonious purpose here, then Pelt is reaching a result that is actually contrary to Davison. And I think as Justice Garmon has pointed out a couple of times in her concurrences in Davis and Davison, Pelt does seem to be sort of an outlier, and certain of its language is not consistent with the remainder of this court's jurisprudence. The court has subsequently kind of distanced itself from the more problematic language that suggests that the court is applying same-act type of analysis, and Davison in fact expressly rejected that. So to the extent that Pelt is read to have adopted that position, it would be inconsistent with Davison and should be overruled. If I understand you correctly, then it's your suggestion that we look at, or try to look at or ascertain what the intent of the defendant was at the time he committed the acts, not as to the acts that were committed? Correct. Right. The focus is the intent. And it makes sense to say that you shouldn't charge felony murder where the intent was actually and admittedly to kill the victim, because then you're avoiding what really should be your burden in that case. But the felony murder provision is intended whenever the intent is to commit a forcible felony. If in the course of committing that felony a death results, then that's magnified into felony murder. And that was the legislature's determination, that any time a forcible felony results in death, it should be charged as murder under that provision. Is our jurisprudence currently that there can never be a charge of aggravated battery as a predicate offense for felony murder? No. In fact, in People v. Visor, this Court expressly recognized that that was appropriate. And subsequently, this Court has continued to reaffirm Visor. So it remains good law in this State that the State can charge an aggravated battery. And in fact, that's actually in the felony murder statute and the definition of forcible felonies. The aggravated battery resulting in grievous harm is a proper predicate felony. If the Court has no further questions, we would ask you to affirm the judgment of the appellate court. Thank you, Ms. O'Connell. Rebuttal. Thank you, Your Honors. Counsel, this is in answer to your question. This is a catch-22. This puts the defendant in. If this claim is available or was available on direct appeal and was forfeited, appellate counsel was ineffective for not raising it. We're not arguing that you need a super lawyer to come up with this claim. I mean, counsel in this case is looking at the dismissal of the knowing murder count, looking at what the instructions were, argued an issue, arguing this issue would only have tied into that, would only have fit in with the issue that was presented on direct appeal, and that the knowing count, the dismissal of that shouldn't have precluded the involuntary manslaughter instructions. We're arguing that the count is the one that should have been preceded on. Instead, these issues would only have strengthened each other. Instead, we have a defendant who's left without a means of obtaining a remedy if we stick with the appellate court's analysis in this case. Counsel argues that interests in finality of convictions say that's okay. That might be true in the case where the conviction is proper. What we have here is a conviction that couldn't be had today under the law. The substantive reach of felony murder does not cover this case. This is not the type of case like Apprendi and Batson that were cited by counsel dealing with procedural matters in the court, dealing with proof beyond a reasonable doubt of a sentencing element, dealing with jury selection. This is the substantive elements of the case. Does this conviction stand? This court should have grave doubts about the viability of this conviction in light of this court's jurisprudence in Morgan and the cases that have followed. As for the statutory construction position, again, the state is arguing Mitchell as a case where a constitutional concern isn't necessarily, or an underpinning isn't necessarily converted into a constitutional issue where there is a statute about involved addressing the situation. Again, that was a procedural matter. What we're talking about here is a substantive decision in law. And it should be applied to this case under this, this case should be made to conform with this court's jurisprudence in Morgan and the cases that have followed. As for can aggravated battery ever be the basis of a charge of felony murder, it can. And this court has ‑‑ Did you say it can't or it can't? Aggravated battery can. It can be the basis, I'm sorry, of a felony murder charge. You know, this court in issuing its decision in Morgan, you know, affirmed the appellate court in Morgan. And in that appellate court decision, there were some examples cited of when it would still be proper, aggravated battery. Particularly the Jenkins case that had come before the appellate court's decision in Morgan where an aggravated battery involved a defendant fighting with a police officer. He knew the officer to be armed. During the struggle, the officer's gun goes off and it actually kills a second officer who's at the scene. The same in aggravated discharge cases that have been upheld since this court's decisions in Morgan and Pelt were issued. In aggravated discharge where there is an exchange of gunfire, essentially a gun battle, whereby a stander is killed by return fire. That's, again, a kind of case where the predicate is proper, even though aggravated discharge would seem to be enveloped in a charge of murder based on a shooting. That predicate is proper in that circumstance. In this case, we have one defendant, one victim, one series of acts that are all charged as a whole. Separating out that intent, trying to parse it out between the predicate felony and the killing is impossible. This court has recognized that where the same acts and the same evidence are used to prove both the predicate and the killing, it is difficult. And I would submit impossible to apportion out that intent. Are you saying we should adopt the same acts? I think that the independent felonious purpose ties in with that. I don't think it's just look to the acts because, again, in the situation where, say the Jenkins case, where you have a defendant struggling with an officer, that struggle leads to the gun being discharged. That's the defendant's one act and the individual is killed, another individual is killed. What I'm saying is this court has said and the appellate courts have said we look at the factual context of each case. In this case, how we pull this out from this court's jurisprudence in Morgan and Pelt escapes me. It seems to fit squarely within this court's jurisprudence. Aggravated battery of a child was an improper predicate in this case and for that reason this court should intervene and reverse the defendant's conviction of that offense. Thank you, Your Honors. Thank you. Thank you, Ms. Bryce and Ms. O'Connell for your arguments.